UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


TONEY JONES
    Plaintiff

v.                                                                                                                                                   No. 3:10CV-00589-M

MICHAEL ASTRUE
    Commissioner of Social Security
    Defendant


**MAGISTRATE JUDGE'S REPORT
and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Greg Marks. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 12 and 13, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on October 27, 2008, by administrative law judge (ALJ) Timothy Keller. In support of his decision denying Title II and Title XVI benefits, Judge Keller entered the following numbered findings:

    1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

    2. The claimant has not engaged in substantial gainful activity since August 31, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

    3. The claimant has the following severe impairments: 1) chronic obstructive pulmonary disease; 2) scarring, neck region; 3) lumbar spine arthritis and degenerative disc disease; and 4) depression/posttraumatic stress disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift, carry, push or pull 50 pounds occasionally and 25 pounds frequently; stand/walk six hours in an eight-hour workday; and sit six hours in an eight-hour workday. The claimant is precluded from climbing ladders, ropes, and scaffolds, but can climb ramps and stairs occasionally. He can have no concentrated exposure to dust, fumes, or gases. He is able to understand, remember and carry out simple tasks and instructions; maintain concentration and attention for two-hour segments over an eight-hour work period; respond appropriately to supervisors and co-workers in a task-oriented setting where contact with others is casual and infrequent; and adapt to simple changes and avoid hazards.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 13, 1952, and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 31, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Administrative Record (AR), pp. 23-29).

## Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A severe impairment is one that "significantly limits" a claimant's ability to do "basic work activities [that are] necessary to do most jobs [such as] walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is deemed to be non-severe. *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is severe, and the sequential evaluation should proceed to Step #3. Nevertheless, the severity step can and should

continue to function as an "administrative convenience to screen out claims that are totally groundless solely from a medical standpoint." *Higgs v. Secretary*, 880 F.2d 860, 863 (1988). In addition, the severe impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). If the evidence supports a finding that the claimant's age, education, work experience, and residual functional capacity (used to determine the claimant's maximum sustained work capability for sedentary, light, medium, heavy or very heavy work as defined by 20 C.F.R. §§ 404.1567 and 416.967) coincide with all the criteria of a particular rule of Appendix 2 of Subpart P, the Commissioner must decide whether the claimant is disabled in accordance with that rule. Section 200.00(a) of Appendix 2; 20 C.F.R. §§ 404.1569a(b) and 416.969a(b).

If the claimant is found to have, in addition to the exertional impairments resulting in his maximum residual strength capabilities, nonexertional limitations, e.g., mental, sensory, or skin impairments, postural or manipulative limitations, and environmental restrictions; the Commissioner may rely on the particular rule only as a "framework for decisionmaking." Section 200.00(e)(1) and (2) of Appendix 2; 20 C.F.R. §§ 404.1569a(d) and 416.969a(d); *Kimbrough v. Secretary*, 801 F.2d 794 (6th Cir., 1986). Accordingly, the focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

## **The Plaintiff's Medical-Vocational Profile**

The plaintiff was born on April 13, 1952 (AR, p. 36). Therefore, as of the date of Judge Keller's decision on October 27, 2008, the plaintiff was 56 years old, which is classified as of "advanced age (age 55 or older)." 20 C.F.R. §§ 404.1563(e) and 416.963(e). The plaintiff has a tenth-grade education, which is classified as "limited," i.e., seventh through eleventh grade (AR, p. 189). 20 C.F.R. §§ 404.1564(b)(3) and 416.964(b)(3). In his written decision, the ALJ found that "If the claimant had the residual functional capacity [RFC] to perform the full range of medium work, a finding of 'not disabled' would be direct by Medical-Vocational Rule 203.19" (AR, p. 29). The so-called medical-vocational, or grid, rules are found in Appendix 2 of the regulations. In addition to a maximum exertional capacity for medium work, advanced age, and a limited education, Grid Rule 203.19 contemplates previous work experience that is "skilled or semiskilled -- skills not transferable."

If the ALJ had found that the plaintiff has a maximum exertional capacity for light, as opposed to medium, work, Grid Rule 202.02 would have been the appropriate rule. Rule 202.02 would have required an ultimate finding of disability. Therefore, the ALJ's finding of lack of disability requires a finding that the plaintiff can perform a limited range of medium work, and the ALJ so found. See ALJ's Finding No. 5, supra.

"Medium" work contemplates an ability to engage in substantial physical activities including the following:

1. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c) and 416.967(c).

2. "Frequent" is a term of art in Social Security disability cases that means "occurring from one-third to two-thirds of the time." Social Security Ruling (SSR) 83-10. Therefore, "[a] full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." Id.

3. "The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity." Id.

4. "Use of the arms and hands is necessary to grasp, hold, and turn objects ...." Id.

## **Discussion**

The plaintiff's primary contention upon judicial review is that substantial evidence does not support the ALJ's RFC finding for medium work. In this regard, the plaintiff relies upon the medical opinion of Jules Barefoot, M.D. On April 1, 2008, at the request of the plaintiff's then-attorney, Ben Haydon, Dr. Barefoot conducted an independent medical examination of the plaintiff. Dr. Barefoot's narrative report is at AR, pp. 464-472. Among other things, Dr. Barefoot found that the plaintiff's ability to operate machinery with foot controls or hand controls is impaired (AR, p. 471). In addition, Dr. Barefoot completed a physical RFC questionnaire finding as follows (AR, pp. 477-479):

1. The plaintiff can never lift/carry 50 pounds but can frequently lift/carry objects weighing less than 10 pounds.

2. He can stand/walk for a total of less than 2 hours in an 8-hour working day.

3. He can never stoop.

4. He can use his hands to grasp, turn, and twist objects on a repetitive basis for no more than 50% of the working day.

In support of these findings, Dr. Barefoot referred to his narrative findings and the presence of the following diagnoses:

1. Chronic obstructive pulmonary disease (COPD) due to years of smoking.

2. Degenerative disc disease (DDD) of the lumbo-sacral spine.

3. Lung mass.

4. Depression / post-traumatic stress disorder (PTSD) due to a traumatic experience during the plaintiff's military service in Korea in 1972 (AR, pp. 34 and 25-26).

5. Shingles.

6. Osteoarthritis (OA).

The magistrate judge concludes that Dr. Barefoot's findings, if accepted, would preclude medium work and would require an ultimate finding of disability pursuant to Grid Rule 202.02.

In contrast to Dr. Barefoot's findings, on December 27, 2006, the non-examining state agency program physician, Timothy Gregg, found that, notwithstanding his osteoarthritis of the lumbar spine, COPD, etc., the plaintiff has the RFC to perform the requirements of medium work (AR, pp. 423-430). In his written decision, the ALJ "accorded substantial weight" to the findings of Dr. Gregg and "little weight" to those of Dr. Barefoot for the following reasons (AR, pp. 27-28):

> ... Jules Barefoot, M.D., independent medical examiner, noted faint expiratory wheezes, a moderate amount of edema present in the fingers of both hands, a moderate amount of crepitation present in both knees and a poor ability to squat; but he also noted breath sounds are equal bilaterally, there is no evidence of any joint deviation affecting the fingers of either hand, no evidence of any muscle asymmetry or leg length discrepancy, no significant joint effusion in either knee, no focal motor or sensory deficits, and the spine is without kyphosis or scoliosis.
> ...
> The undersigned grants little weight to Dr. Barefoot's opinions of the claimant's physical residual functional capacity because the lifting, carrying, and nonexertional limitations are inconsistent with the claimant's daily activities. He admits to regular driving and the undersigned finds such activities wholly inconsistent with Dr. Barefoot's opinions that the claimant has only limited abilities to grasp, carry, and operate machinery with foot controls or hand controls. Dr. Barefoot proffered an assessment the claimant is incapable of even "low stress" jobs. This opinion is a medical-vocational determination reserved for the Commissioner (SSR 96-5p).

(AR, pp. 27 and 28).

The plaintiff argues as follows (Docket Entry No. 12, p. 11):

While an argument could be made that Plaintiff's driving indicates at least a limited ability to operate hand and foot controls ..., this sporadic operation of a motor vehicle is not remotely relevant to Plaintiff's ability to lift weight or to be on his feet. The ALJ makes no attempt to discredit Dr. Barefoot's other physical restrictions, and proceeds to throw out the baby with the bathwater.

9

So far as the magistrate judge is aware, medium work does not typically require use of foot and hand controls. Compare SSR 83-10 ("A job is also in this category [i.e., light] when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator").

The plaintiff's argument is well-taken in that the foot/hand control issue seems to have little or nothing to do with the dispositive issue of whether the plaintiff has the RFC to perform the four requirements of medium work identified at page 7 of this report. Nevertheless, Dr. Barefoot was not the plaintiff's treating physician, and as such, his opinion was not entitled to special weight. Furthermore, another physician, Dr. Gregg, opined that the plaintiff can, in fact, perform the requirements of medium work. In these circumstances, the magistrate judge concludes that the ALJ was not required to identify particularly persuasive reasons for rejecting Dr. Barefoot's contrary medical opinion. One obvious inconsistency that eliminates the need to give controlling or great weight to a particular medical source opinion is a contrary opinion from another source about the same matters. Therefore, the ALJ did not err in crediting Dr. Gregg's opinion in preference to that of Dr. Barefoot. See 20 C.F.R. §§ 404.1527(f)(2)(i) and 416.927(f)(2)(i) ("State agency ... program physicians ... are highly qualified physicians ... who are also experts in Social Security disability evaluation"), Social Security Ruling (SSR) 96-6p ("In appropriate circumstances, opinions from State agency ... program physicians ... may be entitled to greater weight than the opinions of treating or examining sources"), and *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir., 1994) (unlike treating source opinions, consultative examiners' opinions are not entitled to any "special degree of deference"). Stated somewhat differently, while the plaintiff may have desired

an articulation of good reasons for rejecting Dr. Barefoot's opinion in addition to the contrary opinion of Dr. Gregg, it was not legally required.

Next, the plaintiff argues as follows (Docket Entry No. 12, p. 9):

The ALJ writes on page 7 of his decision:

The undersigned found the claimant's allegations of debilitating pain inconsistent with the claimant's daily activities. The claimant alleges severe low back pain, yet he simultaneously admits he can drive a motor vehicle three to four times a week around town. In addition, the claimant prepares simple meals, goes fishing a little, watches television, listens to the radio, and cooks on a grill.

(Tr. 27.) None of these activities is indicative of the ability to do medium level work.

Daily activities are among the factors that the Commissioner should consider in determining the credibility of a claimant's statements and the degree of limitation caused by pain and other subjective symptoms. See complete list at 20 C.F.R. §§ 404.1529(c) and 416.929(c).

Like the plaintiff's prior contention, the argument is persuasive when considered on its own terms. Nevertheless, we do not believe that the ALJ was required to cite examples of medium daily activities in order to find that the plaintiff can, in fact, do medium work. We have already concluded that the ALJ's RFC finding for medium work was supported by substantial medical evidence. Hence, the plaintiff has failed to identify a compelling reason for interference with the ALJ's credibility assessment. See *Smith v. Secretary*, 307 F.3d 377, 379 (6th Cir., 2001) (absent a compelling reason, a reviewing court should not disturb an ALJ's credibility findings).

Finally, the plaintiff argues as follows (Docket Entry No. 12, p. 9):

Plaintiff's subsequent Social Security disability application with an onset date of October 28, 2008 [i.e., the day after Judge Keller's decision], has been approved and he is currently receiving benefits. In light of this fact, it defies credulity that he was not disabled three years prior to the 2008 onset [i.e., he was disabled on August 31, 2005, his alleged onset of disability date] given the plethora of medical evidence to the contrary.

11

Once again, the argument is persuasive on its own terms. However, it is legally inadequate for the following reasons. On one hand, the plaintiff may have submitted new evidence in connection with his subsequent application that proved his disability claim to the satisfaction of the Commissioner. However, the plaintiff has not provided this court with a copy of any such evidence, has not moved for a remand, pursuant to "sentence six" of 42 U.S.C. § 405(g), for consideration of new and material evidence, has not shown that any such evidence relates back to the time prior to Judge Keller's decision, has not stated good cause for failure to submit the evidence or equivalent evidence in a timely manner for Judge Keller's consideration, etc. On the other hand, even if the Commissioner approved the subsequent application based upon essentially the same evidence in the present administrative record:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986). The ALJ's denial decision is supported by substantial evidence and is in accord with applicable legal standards.

**RECOMMENDATION**

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

# NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, any party shall have a period of fourteen (14) days, pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within fourteen (14) days after being served with a copy of said objections. A period of three days shall be added to each fourteen (14) day period above pursuant to Fed.R.Civ.P. 6(d), for a total of seventeen (17) working days.

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).